**UNITED STATES DISCTRICT COURT ************* EASTERN DISTRICT OF TEXAS BEAUMONT DIVISION**

| | | |
|---|---|---|
| GBSM SERVICE AND MANAGEMENT, LLC and BLUDWORTH MARINE LLC<br><br>     Complainants,<br><br>v.<br><br>ROSE CAY MARITIME, LLC, *in personam*; RCM 245, HER TACKLE, FURNITURE APPAREL, APPURTENANCES ETC., *in rem*; and TUG REBEKAH ROSE, HER TACKLE, FURNITURE, APPAREL, APPURTENANCE, ETC., *in rem*<br><br>     Claimants. | §§§§§§§§§§§§§§§§ | CIVIL ACTION NO. 1:23-CV-00190-MAC-ZJH |

**JOINT PRETRIAL ORDER**

**Appearance of Counsel**

List the parties, their respective counsel, and the physical addresses, email address, and telephone numbers, including cell phone numbers, of counsel in separate paragraphs.

**Complainants:**

**GBSM Service and Management LLC**
Robert Joseph Killeen, Jr.,
Killeen & Associates, PC
1811 Bering Drive, Ste. 120
Houston, TX 77057
Office: (713) 626-5100
Cell: (713) 539-4554
rkilleen@killeen-law.com

**Defendants/Claimants:**

**Specially Appearing Claimants RCM 245 LLC and Rebekah Rose LLC
on behalf of the RCM 245 and REBEKAH ROSE, in rem;** and
**Rose Cay Maritime, LLC, in personam.**

George M. Chalos, Esq.
Briton P. Sparkman, Esq.
Chalos & Co., P.C.
7210 Tickner St.
Houston, TX 77055
Office: (713) 574-9582
gmc@chaloslaw.com
bsparkman@chaloslaw.com

### Statement of the Case

**COMPLAINANTS:**

This case involves indisputable facts that Rose Cay Maritime ("RCM"): 1) hired GBSM for services regarding urgent rush repairs to their 794-foot jet fuel barge, RCM 245 in Galveston. 2) RCM Port Engineer, Oscar Balderas, the RCM individual in charge of the vessel's repairs, oversaw all GBSM work, and services rendered, and approve all GBSM invoices totaling **$421,586.03.** Additional RCM employees in New York approved GBSM's invoices. However, after the vessel was repaired and departed, RCM had no intention of paying GBSM.

RCM admits it approved $150,000.00 of GBSM's invoices but after RCM 245 was arrested on May 16, 2023, RCM testified none of GBSM's invoices were approved. RCM Managing Member, Alex Parker, told a vendor the day RCM 245 was arrested that GBM's principal, Mr. Bowman, was criminally negligent of environmental crimes and was going to end up in prison. Additionally, Mr. Parker insisted he would fight "this" forever and the vendor would end up with less money.

RCM 's behavior has been deliberate, in bad faith at worst, or for oppressive reasons at best.

**CLAIMANTS/DEFENDANTS:**

GBSM's claim for $421,586.03 is overstated and includes billing for work which was not authorized by Defendants and/or was not required. Specifically, GBSM was not authorized to engage the services of third-party truck vendors on a "24/7" basis during the pendency of the work performed on the RCM 245 for the period of January 9, 2023 – February 9, 2023. GBSM failed to exercise prudent and professional oversight of the work that it hired subcontractors and third-party vendors to perform, which caused exorbitant and excessive charges for the nature of the work actually performed. GBSM provided a single written quote for a day rate for the removal of cargo/slops from the vessel, which was proposed by GBSM and approved by RCM on January 8, 2023. That quote also included an hourly truck rate of $175 per hour. The work to remove the cargo onboard was completed no later than January 15, 2023. The remaining work that GBSM was hired to perform was to remove water and slops following the completion of tank cleaning operations on the barge. GBSM never provided an updated bid, quote, price, purchase order, or contract rate to Defendants for the work to remove tank washings and slops. After the cargo was removed, there

was no further emergency or rush aspect of the project. RCM did not approve or authorize the prices and/or rates which GBSM subsequently attempted to charge at the conclusion of the project for the services performed. RCM at all times had only agreed and authorized total charges in the amount of $150,000.00 for the work to be performed by GBSM. GBSM spent no more than $215,701.14 for the third-party vendors and its mark-ups on the invoices are unreasonable, exorbitant, in bad faith, and not consistent with market rates in the region.

## Jurisdiction

This is an admiralty and maritime claim within the meaning of 28 U.S.C. §1333, Rule 9 (h) of the Federal Rules of Civil Procedure.

## Motions

List any pending motions.

1) GBSM's Memorandum on Attorney Client Privilege.

2) Claimants/Defendants' Motion in Limine.

## Contentions of the Parties

**COMPLAINANTS:**

RCM *admits* it hired GBSM to perform work for RCM 245 after she arrived in Galveston. After RCM 245 docked at Pier 41 in Galveston, GBSM provide services and attended/oversaw all services from **January 9, 2023**, until **February 9, 2023**. GBSM provided three ("3") invoices to RCM: GM 13254 for $75,000. GM 13261 for $150,383.21 on **January 22, 2023**, due on receipt. And a final invoice, GM 13263, for $196,212.84 due on receipt. All GBSM's work was approved by RCM's Port Engineer, Oscar Balderas, who was RCM's individual on location in Galveston in charge of the repairs of the RCM 245 and was authorized by RCM to "proceed with repairs at Bludworth Marine."

The evidence will show that RCM spent millions of dollars, at least $10 million and according to Managing Member, Mr. Parker, lost $27 million on the RCM 245 for improper repairs during 2022 which resulted in the necessity for the Galveston repairs in January and February 2023. GBSM was a necessary vendor in fixing the faulty repairs and getting RCM 245 back in service. Despite this RCM refused to pay GBSM any money, as it had debts excessing $50 million in March 2023. Subsequently, on **May 16, 2023**, RCM 245 and her tug were arrested in Galveston, despite using improper call signals.

After the arrest on **May 16, 2023**, the managing member of RCM stated he would punish Bludworth ("and GBSM") if they did not take pennies on the dollar and in the end, they would get less money. GBSM has never been paid even a dollar despite RCM authorizing payment of $150,000.00 in February 2023.

**CLAIMANTS:**

GBSM's claim is overstated and unreasonable. There was never an approved quote, bid, contract, or purchase order authorized by Defendants that agreed to the rates charged by GBSM. Moreover, GBSM was never authorized to have trucks and personnel on-standby "24/7" for the duration of the four (4) week project. Proper management and oversight of the services which GBSM was hired to perform should have resulted in charges of no more than USD $145,000 - $155,000 for the work performed. GBSM never had proper management oversight of the third-party vendors after the third or fourth day on the project. Defendants repeatedly requested back-ups and invoicing for the charges and were not provided a fulsome set of all supports for the alleged claims until more than a year later during discovery in the lawsuit. Only then was it revealed that despite GBSM's claims of being "out nearly half a million dollars", GBSM had only paid hard costs in the amount of no more than $215,701.14. GBSM's invoices to Defendants for the alleged work performed are overstated, unreasonable, in bad faith and improperly seek a windfall. GBSM did not receive the $150,000 payment because it refused to execute a written statement confirming the payment in satisfaction of the work performed.

### Admissions of Fact

List all facts that require no proof.

**PROPOSED FINDINGS OF FACT**

### Uncontested Issues of Fact

1. GBSM Service and Management LLC is a Texas company with its principal place of business in Houston, Texas.

2. Gregg Bowman is the principal and owner of GBSM.

3. RCM 245 LLC owns the barge RCM 245.

4. Rose Cay Maritime, LLC ("RCM") is a limited liability company organized and existing under the laws of the state of Delaware and is the manager of the Tug Rebekah Rose and RCM 245.

5. RCM 245 is a 554.8 foot long, 93.20 feet wide, and 45.80 feet deep/draft tank barge built in 1997. She is registered in the United States bearing primary vessel number 1050073,

6. The RCM 245's tanks have a depth of approximately seventy ("70") feet.

7. RCM 245 arrived in Galveston around **December 28, 2022,** and subsequently docked at Galveston Pier 41 on **January 4, 2023**.

8. When RCM 245 arrived in Galveston, she had remaining jet fuel in her port side compartments 6, 7, and 8.

9. Mr. Oscar Balderas ("Mr. Balderas") was hired in **December 2022** as the Port Engineer for RCM overseeing her repairs in Galveston.

10. During the period of **November 27, 2022 – February 15, 2023**, Oscar Balderas was a Port Engineer for RCM.

11. Mr. Balderas, on behalf of RCM, contacted Greg Bowman ("Mr. Bowman"), principal at GBSM on Sunday, **January 8, 2023,** and retained their services.

12. One service GBSM performed for RCM was to locate third party companies to assist in the removal of the jet fuel by placing it into vacuum trucks for it to be hauled away back to the customer, Valero.

13. On **January 9, 2023**, RCM received GBSM's New Customer Form.

14. On **January 13, 2023**, GBSM filled out and returned RCM's New Vendor Registration form.

15. On **February 15, 2023**, RCM terminated Mr. Balderas' employment.

16. GBSM issued invoice GM13254 dated January 13, 2023, in the amount of $75,000.00.

17. GBSM issued invoice GM13261 dated January 22, 2023, in the amount of $150,383.21.

18. GBSM issued invoice GM13263 dated February 9, 2023, in the amount of $196,212.84.

19. GBSM has not received any payment on the invoices it has remitted.

## Contested Issues of Fact

**COMPLAINANTS:**

1. On or about **July 26, 2021**, Rose Cay GP, LLC acquired Bouchard vessels from Bankruptcy Court for $130 million.

2. During **2022**, the RCM 245 purportedly underwent repairs at a Florida shipyard.

3. The work conducted on the RCM 245 in Tampa during 2022, included ballast issues and valve repairs.

4. Specifically, RCM 245 was at the Tampa Shipyard for nine ("9") months during 2022.

5. RCM and/or Pennantia LLC spent and/or lost approximately $27 million on/for RCM 245 during **2022**.

6. Pennantia is believed to be the holding company of RCM 245 LLC.

5

7. As of **January 2023**, Mr. Balderas had worked in the maritime industry thirty-one ("31") years.

8. RCM *admits* it hired GBSM to perform work for RCM 245 after she arrived in Galveston.

9. Mr. Balderas was authorized by RCM to "proceed with repairs at Bludworth Marine."

10. No parties that worked on RCM 245 for RCM entered written contracts.

11. Mr. Balderas oversaw all third-party repairs for any vendor.

12. Mr. Balderas defined the scope of work necessary for RCM 245 while she was in Galveston.

13. Mr. Balderas was in charge of the repairs of the RCM 245.

14. RCM never created a budget for the repair work for RCM 245 when she arrived and while she was in Galveston from **January 4, 2023**, to **February 9, 2023**.

15. Predicated upon information provided verbally, Mr. Bowman's quote on Sunday, **January 8, 2023**, for $6730.00, was the removal of fuel from an approximately 30,000-barrel barge, or an approximate two ("2") day job.

16. Upon arrival at Pier 41 on Monday, **January 9, 2023**, Mr. Bowman realized that RCM 245 holds approximately 250,000 barrels of jet fuel.

17. On Monday, **January 9, 2023**, Mr. Bowman also realized the jet fuel in the bottom of RCM 245's compartments could not be pulled off ("removed") by RCM 245's own pumps.

18. According to Mr. Bowman: "Everyone was fully aware that this job was much different than what -- the two- or three-day job it was originally purported to be."

19. Upon arrival at Pier 41, in Galveston, RCM 245's pumps would not pump out the jet fuel, as there was valve leakage. Consequently, the jet fuel product had to be removed via outside sources. Second, the compartments or tanks then had to be cleaned. Third, a marine chemist had to certify the RCM 245 was safe for hot work repairs. And finally, the leakage and other issues had to be repaired.

20. Additionally, RCM 245 had a ballast system which was not working.

21. The RCM 245's ballast system is used for steerage and to offload products such as jet fuel.

22. Mr. Balderas testified that GBSM's services for the RCM 245 were a "24/7 operation".

23. RCM admits that trucks were lined up 24/7 to take the jet fuel product off the RCM 245 and back to Valero.

6

24. This was a rush job.

25. Mr. Bowman of GBSM was at the RCM 245 every day his company provided services and even slept in his truck.

26. Bludworth Marine, the shipyard, had night crews working.

27. Everyone initially believed repairs to the RCM 245 would be simple and short in duration as Bludworth retained the services of the marine chemist for hot work by **December 30, 2022**, before she docked in Galveston.

28. RCM scheduled the marine chemist, which is necessary before performing hot work repairs for **January 5, 2023.**

29. Bludworth's initial repair proposal was simplistic.

30. Bludworth's initial repair estimate as of **January 7, 2023,** was $42,600.90.

31. Mr. Balderas reported on **January 9, 2023**, to RMC that "the trucks showed up but had problems with pumping the product overboard. Also, I inspected the trucks to ensure they were cleaned, so I rejected one truck because it had little effect on a previous customer."

32. On **January 9, 2023**, Bludworth informed RCM that, "any changes to the scope of work will affect costs."

33. Mr. Bowman was informed that RCM was made aware daily of the pricing and Mr. Balderas approved the pricing.

34. On the same day, **January 13, 2023**, GBSM's first invoice, no.13254 for $75,000.00 was provided to RCM.

35. **On January 21, 2023**, Bludworth Marine forwarded its initial invoice for approximately $60,000.00 to RCM.

36. On this same day, **January 21, 2023,** Bludworth made Vice President of RCM, Mr. Wilson aware that, "another progress invoice to be sent first thing tomorrow approx 230K."

37. Managing Partner of RCM, Mr. Alex Parker ("Mr. Parker") stated on **January 21, 2023**, the following: "If other vendors are required Oscar has the helm to make that call."

38. During 2022, RCM 245 was dry-docked in Tampa and underwent repairs for nine ("9") months.

39. On **January 21, 2023**, while RCM 245 repairs were ongoing in Galveston, Managing Partner of RCM, Mr. Parker also stated the following regarding Tampa repairs:

> "The vessel remains out of service after 12mo and over 27M-costing us millions which are accruing. Rather than take initiatives on warranty,

document, follow clear instructions below, only Oscar and Jasper seemingly did anything".

40. A week prior, on **January 14, 2023**, Mr. Parker had stated the following regarding Tampa repairs or lack thereof:

    "Chad-the warranty repairs for shotty work by ADR ("ADR Power Systems, Inc.") is unacceptable. I am ok to escalate with counsel and use alternative vendors. The Rebekah and 245 breakdown (sic) has cost us massively in addition to what happened in Tampa. The 120K settlement and MSA stops until a FULL investigation of their work and equipment performance is complete."

41. On **January 23, 2023**, Mr. Wozniak who Mr. Balderas was reporting to at RCM left the company.

42. RCM knew that as of **January 26, 2023**, repairs in Galveston would significantly exceed $1 million.

43. Mr. Wilson even stated to Bludworth Marine on **January 26, 2023**, that "I will get moving on this immediately" regarding Bludworth Marine's two invoices approximately $290,000.00.

44. The next day, **January 27, 2023**, the Vice-President of RCM, Mr. Jasper Wilson ("Mr. Wilson") wrote the following:

    "GBSM-$75K-Need to pay today. They were (sic) came and did the work quickly for us. Stephen K got an alternative quote for $170K."

45. The repairs of the RCM 245 were so important that Mr. Wilson, as vice-president of RCM, flew down from New York and was on location at Pier 41 for her repairs from **January 19** until **February 2, 2023**.

46. Tampa Repair was paid in full for the services rendered to the RCM 245 during 2022 before she arrived in Galveston.

47. Mr. Balderas was told by Mr. Parker that "he spent a fortune down there [Tampa] and nothing got done properly."

48. Mr. Balderas testified that 80 percent of the Tampa work scopes were a failure, and the RCM 245 had 10 deficiencies as well from the United States Coast Guard that had to be repaired and signed off on by them before she could leave Galveston.

49. Mr. Balderas' direct supervisor, Mr. Chad Wozniak never disapproved of GBSM's services,invoices.

50. Bludworth Marine inquired about its second invoice regarding payment with RCM again on **February 1, 3 and 6, 2023.**

8

51. GBSM's second invoice was forwarded on **January 22, 2023**, for $150,383.21.

52. Initially, RCM set up a wire payment to GBSM for $75,000.00 or some amount.

53. A preliminary second GBSM invoice had previously been forwarded for approximately $126,000.00.

54. Despite GBSM having billed RCM more than $225,000.00 and continuing to perform ongoing work for the RCM 245, on **February 3, 2023**, RCM wanted GBSM to agree that it would take "$150K or less" for the entire job.

55. Mr. Balderas believed Mr. Wilson had him make this offer because, "he was trying to make deals to cut the-cut the cost down, you know, take pennies over the dollar…"

56. Bludworth Marine checked back with RCM on **February 9, 2023,** regarding payment on its second invoice.

57. After having all work performed in Galveston approved by the United States Coast Guard, RCM 245 departed Galveston on Thursday, **February 9, 2023**

58. GBSM Invoice 13263 in the amount of $196,212.84 was sent to RCM on **February 9, 2023.**

59. When RCM 245 left Galveston, no one at RCM informed Mr. Balderas that GBSM's three ("3") invoices would be denied.

60. RCM sent Mr. Kenneth Pady down to meet with Bludworth on **February 20, 2023,** regarding Bludworth Marine's invoices.

61. On this same date, Mr. Pady stated the following to RCM's Mr. Parker and Mr. Hickey:

    "I need to speak with you on the GBSM. After further review of GBSM, that price is within reason for mobile set up to gas free a barge of this size."

62. After RCM 245 left Galveston, an explanation by RCM to its customer, Valero, on **February 21, 2023**, was the following, *inter alia*:

    The RCA creating the ROB was identified by some faulty cargo valves sucking air and preventing proper stripping upon completion of the first cargo discharge. This tied with the leaking ballast header expansion joints that were previously repaired and ultimately replaced, provided an opportunity to investigate and conduct an entire overhaul of each system including upgrades to the IGS…
    This also supplied an opportunity for RCM to pursue cargo valves that were incorrectly reinstalled and not identified prior, and to have these valves replaced properly during this time. The entire cargo system was tested to ensure performance.

63. RCM booked the return of cargo ("jet fuel") pumped off RCM 245 and returned to Valero

as "an offset to revenue."

64. Mr. Bludworth wrote to Mr. Wilson on **February 10, 2023**, and stated the following *inter alia*:

    "The two partial invoices for around $300,000 represents less than ½ the the (sic) total to date and we hope we can receive the balance on the 2nd of the two partials paid as soon as today, as we have been asking."

65. Bludworth informed RCM it would have its final invoice to them on Monday, **February 13, 2023.**

66. Bludworth forwarded its final invoice to Mr. Wilson and Mr. Balderas on **February 14, 2023**; yet three ("3") days later Mr. Wilson indicates he does not have Bludworth Marine's final invoice.

67. Mr. Balderas believed he was terminated by RCM as a "cost-cutting decision".

68. Approximately, a week after RCM 245 left Galveston and despite having been on location in Galveston for approximately two ("2") weeks, Mr. Wilson wrote:

    "Need to understand why they [GBSM] managed this project in such an un-efficient manner."

69. On **February 20, 2023,** Mr. Wilson represented to Mr. Bludworth that, "we will get organized on a payment". No payment was ever forthcoming.

70. RCM testified that in February and **March 2023**, RCM "was in the process of shoring up its banking".

71. Mr. Wilson, as corporate representative of RCM testified that, "I don't know why I wrote that ["shoring up its banking"]… and "I didn't really mean anything by it".

72. RCM made a banking change in 2023 or 2024.

73. On M**arch 17, 2023**, Mr. Wilson sent Mr. Parker an email concerning "short term cash needs", but to date, has refused to provide the attachment.

74. In **March 2023**, Pennantia had denied bills of **$5,852,519.55.** It had bills that needed to be paid of **$8,953,631.23.** Their total debt was at least **$14,806,150.58.**

75. Mr. Balderas approved all three ("3") of GBSM's invoices ("totaling $421,586.03") and testified that GBSM's services rendered were "fair and reasonable".

76. As of **April 19, 2023**, RCM owed Bludworth $585,567.98.

77. Other vendors that provided services to RCM 245 in **January and February 2023** were not paid.

78. Mr. Balderas testified as follows regarding Mr. Bowman and GBSM:

    "He provided, and everybody was aware of what kind of service he was provided (sic) to us. And just moving forward. I mean, he did a great job for us."

79. GBSM and Bludworth Marine had to have RCM 245 with her tug arrested on May 16, 2023.

80. RCM never paid GBSM a dollar ninety ("90") days after it provided its services for the RCM 245 [or to date].

81. RCM testified under oath that "it was **not** having money difficulties in February, March, and April 2023.

82. After RCM 245 was repaired and left Galveston, Mr. Bludworth spoke with Mr. Parker, managing member of RCM on **March 4, 18 and 24, 2023.**

83. Mr. Parker stated to Mr. Bludworth that the repairs to RCM 245 "shouldn't have cost that much money" and "he called us crooks".

84. After RCM 245 was arrested, despite being represented by counsel, Mr. Parker contacted Mr. Bludworth that day. During this call, Mr. Parker stated that GBSM and Bludworth Marine were criminally negligent for environmental crimes and that he [RCM] would fight this forever, and in the end, Bludworth Marine would end up with less money.

85. Whether RCM has acted in bad faith towards GBSM. On **February 28, 2023**, RCM inhouse legal counsel stated the following regarding GBSM's invoices:

    "Candidly, the supplemental invoices following invoice GM13261, which is marked "Final Bill RCM 245 (Vessel Repair), came as a complete shock, as the Owners of the RCM 245 only ever approved $150,000 for the services and work to be performed by GBSM for Tank Cleaning."

86. On **March 30, 2023**, RCM's bill account indicates GBSM's invoices are "denied bills".

87. On **February 28, 2024**, RCM testified that GBSM's invoices from **February 3** through **February 14, 2023,** were unapproved.

88. After not being paid, Mr. Bowman borrowed money to pay all vendors GBSM hired on behalf of RCM 245. GBSM's invoice markups above actual cost were below the industry standards.

89. GBSM is entitled to recover on all three of its invoices, legal interest, costs, and legal fees.

11

**CLAIMANTS/DEFENDANTS:**

1. Mr. Bowman provided two quotes on January 8, 2023 to Oscar Balderas of RCM.

2. The first quote was for two trucks to pump off the cargo from the RCM 245 for an all-in price of $3,978.

3. Shortly thereafter, he provided a second quote made later the same day, which amended the quote to pump off the cargo and deliver it to Valero.

4. Mr. Bowman did not ask for any details about the barge, did not visit the barge, did not ask for a general arrangement for the barge, or any other information prior to issuing the quotes.

5. RCM agreed to the second quoted rate for two trucks (for full 8 hour days) for the removal of the cargo from the barge and delivery to the Magellan Terminal, i.e. $6,730 per day.

6. The January 8, 2024 quote also included a sur-charge truck fee of $175 per hour.

7. The first day that Mr. Bowman was onsite, January 9, 2024, he had visual confirmation of the size of the vessel and its arrangement.

8. Mr. Bowman never provided written notice that the removal of the cargo was going to cost more than the quoted day rate.

9. The first three days, no product was removed from the Vessel.

10. Once GBSM hired and scheduled the right equipment to the jobsite for the size of the barge, the removal of the product took less than two full days.

11. By the sixth day, GBSM had removed the remaining slops and water from the tank.

12. The cargo removal and delivery portion of the project was completed between January 9 – 14, 2023.

13. Over the course of approximately the next four weeks, from January 15 – February 9, 2023, GBSM arranged for trucks to be onsite for the removal of water and slops generated by valve testing and tank cleaning operations which were occurring onboard.

14. The trucks and other equipment did not belong to GBSM, but were all subcontracted out through third parties.

15. GBSM did not provide any revised or new quotes to RCM for the removal of water and slops from the tank separate and distinct from the previously reported $175 per truck fee.

16. GBSM did not provide an updated bid, email, have a signed contract, or purchase order for the removal of the water and slops or the amount that GBSM would charge for same.

17. RCM never approved "24/7" or "around-the-clock" truck services once the cargo was removed on January 15, 2023.

18. There was no emergency and no need for trucks and personnel to be standing by idling while waiting for the next tank to empty.

19. After the first five days for the cargo removal, GBSM personnel were not onsite for the remainder of the tank water/slops removal operations.

20. Oscar Balderas confirmed that no one ever said that the job was a "time is of the essence" job and/or that there was a requirement to "expedite" the repairs.

21. Mr. Balderas confirmed that he had to receive approval from RCM management in order to agree to work and/or price quotes on the RCM 245 project.

22. Mr. Balderas was alleged by Bludworth Marine to have improperly utilized a Bludworth company credit card to permit nearly $40,000 dollars in charges to a company identified as Armstrong Industries, which Richard Bludworth had never heard of and did not believe was a real, legitimate business.

23. GBSM never provided daily reports, updates, or tickets demonstrating the progress made, product offloaded, and/or estimated charges incurred.

24. Mr. Balderas knew that he did not have final approval authority on pricing, contracts, or invoices and that all work had to be approved by RCM management.

25. RCM management never approved the GBSM invoices, as the charges were far in excess of the original quoted work and GBSM repeatedly failed to provide requested back-ups and supports for the work allegedly performed.

26. GBSM Invoice 13261 was entitled "Final Bill RCM 245 (Vessel Repair)", however GBSM refused to provide written confirmation that all claims would be satisfied in exchanged for payment of $150,000.

27. GBSM charged exorbitant rates without any reasonable grounds to support same and the rates were far in excess of the reasonable, market rates for similar services for work in the region.

28. Trucking rates by the third-party vendors were fair and reasonable for the work being performed, but were then marked-up by GBSM far beyond any industry standard.

29. Bluebonnet Petrochemical Solutions charged $95.00 per hour for trucks.

30. Greyhound Environmental Consulting LLC charged $102.50 per hour for trucks.

31. PBI International charged $125.00 per hour for trucks.

32. Specialty Energy Services charged $130.00 per hour for trucks.

33. Interstate Petroworks LLC charged $115.00 per hour for trucks.

34. Sun Coast Resources Inc. charged $0.15 per gallon for potable water.

35. The total amount of third-party vendor charges for the services performed at the RCM 245 project was no more than $215,701.10.

36. Notwithstanding, GBSM charged exorbitant, excessive, and unreasonable rates which were never agreed by Defendants or their representatives.

**Agreed Applicable Propositions of Law**

1. This is an admiralty and maritime claim within the meaning of 28 U.S.C. §1333, Rule 9 (h) of the Federal Rules of Civil Procedure.

2. This is an admiralty and maritime claim within the meaning of the Federal Maritime Lien Act, 46 U.S.C. §31301, *et seq.*

**Contested Issues of Law**

**COMPLAINANTS**

1. This Court has jurisdiction over Complainants' claim pursuant to Tex. R. Civ. P. 185 pursuant to its concurrent or pendant jurisdiction.

2. Complainants are entitled to recover legal fees pursuant to Suit on Account.

3. An award of legal fees pursuant to Suit on Account is not inconsistent with the Maritime Lien Act which is silent regarding recovery of legal fees.

4. State law may 'supplement' federal maritime law but may not directly contradict it.[1]

5. The Unites States Supreme Court has opined that punitive damages are "available in maritime cases for tortious acts of a particularly egregious nature."[2]

6. Alternatively, attorney's fees are awarded under admiralty law standalone under an exception to the American Rule. Attorneys' fees are allowed when there has been a showing that the losing party has conducted an action in bad faith, vexatiously, wantonly, or for oppressive reasons.[3]

7. A "district court has wide discretion in deciding motions for attorney's fees in admiralty cases."[4]

---

[1] Gilmore & Black, The Law of Admiralty § 1-17, at 49-50 (2d ed. 1975).

[2] *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 129 S.Ct. 2561, 174 L. Ed. 2d 382 (2009).

[3] *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721, 102 S. Ct. 2112, 2114, 72 L. Ed. 2d 511, 515 (1982).

[4] *Fernandez v. Haynie*, 31 Fed. Appx. 816, 2002 U.S. App. LEXIS 4827, citing to *Ost-West-Handel Bruno Bischoff GmbH v.*

14

8. 28 U.S.C.S. § 1920 authorizes Complainant to recover fees of the clerk and marshal, and the court is to include in its final judgment all reasonable expenses paid by the prevailing party incidental to, or arising from the arrest or attachment of any vessel.

**CLAIMANTS/DEFENDANTS**

1. Whether Plaintiff has a maritime lien against the Vessel.

2. Whether the services performed were authorized by someone with authority to bind the vessel.

3. Whether the charges by GBSM were reasonable, customary, and in accord with prevailing charges for the work done and the materials furnished. *TTT Stevedores of Tex., Inc. v. M/V Jagat Vijeta*, 696 F.2d 1135, 1141 (5th Cir. 1983).

4. Whether Plaintiff is entitled to recover for its alleged Suit on Account.

5. Whether the amount of the account is just, that is the prices charged are pursuant to an express agreement or in the absence of an agreement, the charges are usual, customary, or reasonable. Powers v. Adams, 2 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

6. Plaintiff is not entitled to attorneys fees under federal or state law.

### Exhibits

GBSM's exhibits are attached.

Claimants/Defendants' Exhibit List is attached.

### Witnesses

GBSM's witnesses are attached.

Claimants/Defendants' Witness List is attached.

### Settlement

Mediation was held on February 29, 2024, before W. Robins Brice proved unsuccessful. Subsequently on May 16, 2024, Bludworth Marine settled with RCM, Pennantia LLC, RCM 245 LLC, RCM 225 LLC, Rebekah Rose LLC, and the vessels *in rem*. All of GBSM's claims remain unresolved.

---

*Project Asia Line*, 160 F.3d 170, 1998 U.S. App. LEXIS 28247, 1999 AMC 380.

**Trial**

Include in this paragraph the following:

(a) Trial will be non-jury.

(b) Probable length of trial: 3-4 days.

(c) Availability of witnesses: All available except Mr. Balderas, whom may be unavailable as he has a home in Mexico. Claimants/Defendants submit Mr. Balderas confirmed at his deposition his willingness and availability to attend at trial. Claimants/Defendants do not agree that he is "unavailable" when a trial date has not been set.

(d) Any foreseeable logistical problems. None.

**Additional Required Attachments**

(a) GBSM's Proposed findings of fact and conclusions of law are attached.

(b) GBSM's Memoranda of law on attorney-client privilege is attached

APPROVED:

_____  December 5, 2024
Counsel for Complainants, GBSM Service    Date
and Management


_____  December 5, 2024
*Counsel for Claimants/Defendants,*    Date
*RCM 245, et al.*