UNITED STATES DISCTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **GBSM SERVICE AND MANAGEMENT, LLC and BLUDWORTH MARINE LLC**<br><br>Complainants,<br><br>v.<br><br>**ROSE CAY MARITIME, LLC,** *in personam*; **RCM 245, HER TACKLE, FURNITURE APPAREL, APPURTENANCES ETC.,** *in rem*; and **TUG REBEKAH ROSE, HER TACKLE, FURNITURE, APPAREL, APPURTENANCE, ETC.,** *in rem*<br><br>Claimants. | § § § § § § § § § § § § § § § § § | **NO. 1:23-CV-00190-MAC-ZJH**<br>**ADMIRALITY** |

**COMPLAINANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

NOW INTO COURT, through undersigned counsel, come Complainant, GBSM Service and Management LLC ("GBSM or Complainant"] and file their Proposed Findings of Fact and Conclusions of Law:

**GBSM PROPOSED FINDINGS OF FACT**

1. On or about **July 26, 2021**, Rose Cay GP, LLC acquired Bouchard vessels from Bankruptcy Court for $130 million.[1]

2. RCM 245 LLC. owns the barge RCM 245.[2]

---

[1] Bankruptcy court Doc. 1114. (Attached).

[2] Doc. 17.

1

3. Rose Cay Maritime, LLC ("RCM") is a limited liability company organized and existing under the laws of the state of Delaware and is the manager of the Tug Rebekah Rose and RCM 245.[3]

4. RCM 245 is a 794.8 foot long, 93.20 feet wide, and 45.80 feet deep/draft tank barge built in 1997. She is registered in the United States bearing primary vessel number 1050073, and she is now or will be again during this action within this District and the jurisdiction of this Court.[4]

5. The RCM 245's tanks have a depth of approximately seventy ("70") feet.[5]

6. During **2022**, the RCM 245 was worked on for nine ("9") months and purportedly repaired at a Florida shipyard.[6]

7. The work conducted on the RCM 245 in Tampa during 2022, included ballast issues and valve repairs.[7]

8. Specifically, RCM 245 was at the Tampa Shipyard for nine ("9") months during 2022.[8]

9. RCM and/or Pennantia LLC spent and/or lost approximately $27 million on/for RCM 245 during **2022**.[9]

10. Pennantia is believed to be the holding company of RCM 245 LLC.[10]

---

[3] Doc. 21.

[4] *Id*.

[5] RCM corp. depo, p.51.

[6] Petitioners 334-335; RCM Corp Depo, p.49; Response to RFA no. 1.

[7] Response to RFA 2,3 & 4.

[8] Petitioners 344-345.

[9] Petitioners 346.

[10] RCM 245 is insured by Steamship Mutual through Pennantia, LLC, a member of this club.

11. RCM 245 arrived in Galveston around **December 28, 2022,** and subsequently docked at Galveston Pier 41 on **January 4, 2023**.[11]

12. When RCM 245 arrived in Galveston, she had remaining jet fuel in her port side compartments 6, 7 and 8.[12]

13. Mr. Oscar Balderas ("Mr. Balderas") was hired in **December 2022** as the Port Engineer for RCM overseeing her repairs in Galveston.[13]

14. As of **January 2023**, Mr. Balderas had worked in the maritime industry thirty-one ("31") years.[14]

15. Mr. Balderas on behalf of RCM contacted Greg Bowman ("Mr. Bowman"), principal at GBSM on Sunday, **January 8, 2023,** and retained their services.[15]

16. RCM *admits* it hired GBSM to perform work for RCM 245 after she arrived in Galveston.[16]

17. Mr. Balderas was authorized by RCM to "proceed with repairs at Bludworth Marine."[17]

18. Mr. Balderas oversaw all third-party repairs for any vendor.[18]

19. Mr. Balderas defined the scope of work necessary for RCM 245 while she was in Galveston.[19]

---

[11] Response to RFA no. 7.

[12] Response to RFA no. 8.

[13] Balderas, p. 13-14 & 82.

[14] Balderas, p. 10-11.

[15] Balderas, p. 25.

[16] Response to RFA no. 14.

[17] RCM 755.

[18] Balderas, p. 17.

[19] Balderas, p. 31

20. Mr. Balderas was in charge of the repairs of the RCM 245.[20]

21. RCM never created a budget for the repair work for RCM 245 when she arrived and while she was in Galveston from **January 4, 2023**, to **February 9, 2023**.[21]

22. Predicated upon information provided verbally, Mr. Bowman issued a quote on Sunday, **January 8, 2023**, for $6730.00, believing the job to be removal of fuel from an approximately 30,000-barrel barge, or an approximate two ("2") day job.[22]

23. On Monday, **January 9, 2023**, Mr. Bowman realized that RCM 245 holds approximately 250,000 barrels of jet fuel.[23]

24. On Monday, **January 9, 2023**, Mr. Bowman also realized the jet fuel in the bottom of RCM 245's compartments could not be pulled off ("removed") by RCM 245's own pumps.[24]

25. According to Mr. Bowman: "Everyone was fully aware that this job was much different than what -- the two- or three-day job it was originally purported to be."[25]

26. Upon arrival in Galveston RCM 245's pumps would not pump out the jet fuel, as there was valve leakage. Consequently, the jet fuel product had to be removed via outside sources. Second, the compartments or tanks then had to be cleaned. Third, a marine chemist had to

---

[20] RCM, p.42.

[21] *Id;* RCM, p. 101-102.

[22] Bowman, p. 57 & 76.

[23] RCM corp., p. 66; Bowman, p. 76.

[24] Bowman, p. 76; Balderas, p.22.

[25] *Id.*

certify the RCM 245 was safe for hot work repairs. And finally, the leakage and other issues had to be repaired.[26]

27. Additionally, RCM 245 had a ballast system which was not working properly.[27]

28. The RCM 245's ballast system is used for steerage and to offload products such as jet fuel.[28]

29. A service GBSM performed for RCM was to locate third party companies to assist in the removal of the jet fuel by placing it into vacuum trucks for it to be hauled away back to the customer, Valero.[29]

30. Mr. Balderas testified that GBSM's services for the RCM 245 were a "24/7 operation".[30]

31. RCM admits that trucks were lined up 24/7 to take the jet fuel product off the RCM 245 and back to Valero.[31]

32. This was a rush job.[32]

33. Mr. Bowman of GBSM was at the RCM 245 every day his company provided services and even slept in his truck.[33]

34. Bludworth Marine, the shipyard, had night crews working.[34]

---

[26] Balderas, p. 21-22; RCM, p.49.

[27] Balderas, p. 35.

[28] Balderas, p. 37.

[29] Balderas. P. 26.

[30] Balderas, p. 60.

[31] RCM, p. 51-52.

[32] Balderas p, 168

[33] *Id*.; & p. 58-59.

[34] Bludworth, p. 202.

35. Everyone initially believed repairs to the RCM 245 would be simple and short in duration as Bludworth retained the services of the marine chemist for hot work by **December 30, 2022**, before she docked in Galveston.[35]

36. RCM scheduled the marine chemist, which is necessary before performing hot work repairs for **January 5, 2023.**[36]

37. Bludworth's initial repair [proposal was simplistic.[37]

38. Bludworth's repair estimate as of January 7, 2023, was $42,600.90.[38]

39. On **January 9, 2023**, RCM received GBSM's New Customer Form.[39]

40. Mr. Balderas reported on **January 9, 2023**, to RMC that "the trucks showed up but had problems with pumping the product overboard. Also, I inspected the trucks to ensure they were cleaned, so I rejected one truck because it had little effect on a previous customer."[40]

41. On **January 9, 2023**, Bludworth informed RCM that, "any changes to the scope of work will affect costs."[41]

42. On **January 13, 2023**, GBSM filled out and returned RCM's New Vendor Registration form.[42]

---

[35] Petitioners 154.

[36] Petitioners' 083.

[37] RCM 1763.

[38] Petitioners' 150.

[39] RCM 82-83.

[40] RCM 2020.

[41] RCM 2019.

[42] RCM243-244.

43. Mr. Bowman was informed that RCM was made aware daily of the pricing and Mr. Balderas approved the pricing.[43]

44. On the same day, **January 13, 2023**, GBSM's first invoice, no.13254 for $75,000.00 was provided to RCM.[44]

45. **On January 21, 2023**, Bludworth forwarded its initial invoice for approximately $60,000.00 to RCM.[45]

46. On this same day, January 21, 2023, Bludworth made Vice President of RCM, Mr. Wilson aware that, "another progress invoice to be sent first thing tomorrow approx 230K."[46]

47. Managing Partner of RCM, Mr. Alex Parker ("Mr. Parker") stated on **January 21, 2023**, the following: "If other vendors are required Oscar has the helm to make that call."[47]

48. During 2022, RCM 245 was dry-docked in Tampa and underwent repairs for nine ("9") months.[48]

49. On **January 21, 2023**, while RCM 245 repairs were ongoing in Galveston, Managing Partner of RCM, Mr. Parker also stated the following regarding Tampa repairs:

"The vessel remains out of service after 12mo and over 27M-costing us millions which are accruing. Rather than take initiatives on warranty, document, follow clear instructions below, only Oscar and Jasper seemingly did anything."[49]

---

[43] Bowman, p.85-86.

[44] RCM 135-140.

[45] RCM 950 & Petitioners' 139.

[46] Petitioners' 119.

[47] Petitioners' 346.

[48] RCM, p. 33-34.

[49] Petitioners' 346.

50. A week prior, on **January 14, 2023**, Mr. Parker had stated the following regarding Tampa repairs or lack thereof:

   "Chad-the warranty repairs for shotty work by ADR ("ADR Power Systems, Inc.") is unacceptable. I am ok to escalate with counsel and use alternative vendors. The Rebekah and 245 breakdown (sic) has cost us massively in addition to what happened in Tampa. The 120K settlement and MSA stops until a FULL investigation of their work and equipment performance is complete."[50]

51. On **January 23, 2023**, Mr. Wozniak who Mr. Balderas was reporting to at RCM left the company.[51]

52. RCM knew that as of **January 26, 2023**, repairs in Galveston would significantly exceed $1 million.[52]

53. Mr. Wilson even stated to Bludworth Marine on **January 26, 2023**, that "I will get moving on this immediately" regarding Bludworth Marine's two invoices approximately $290,000.00.[53]

54. The next day, **January 27, 2023**, the Vice- President of RCM, Mr. Jasper Wilson ("Mr. Wilson") wrote the following:

   "GBSM-$75K-Need to pay today. They were (sic) came and did the work quickly for us. Stephen K got an alternative quote for $170K."[54]

55. The repairs of the RCM 245 were so important that Mr. Wilson, as vice-president of RCM, flew down from New York and was on location at Pier 41 for her repairs from **January 19**

---

[50] Petitioners '348-349.

[51] RCM 2033.

[52] RCM 693.

[53] RCM 1382.

[54] RCM 690.

until **February 2, 2023**.[55]

56. Tampa Repair was paid in full for the services rendered to the RCM 245 during 2022 before she arrived in Galveston.[56]

57. Mr. Balderas was told by Mr. Parker that "he spent a fortune down there [Tampa] and nothing got done properly."[57]

58. Mr. Balderas testified that 80 percent of the Tampa work scopes were a failure, and the RCM 245 had 10 deficiencies as well from the United States Coast Guard that had to be repaired and signed off on by them before she could leave Galveston.[58]

59. Mr. Balderas' direct supervisor, Mr. Chad Wozniak never disapproved of GBSM's services.[59]

60. Bludworth Matine inquired about its second invoice regarding payment with RCM again on **February 1, 3 and 6, 2023.**[60]

61. GBSM's second invoice was forwarded on **February 3 or 4, 2023**, for $150,383.21.

62. Initially, RCM set up a wire payment to GBSM for $75,000.00 or some amount.[61]

63. A preliminary second invoice had previously been forwarded for approximately $126,000.00.

---

[55] RCM 2034-2048.

[56] RCM, p. 85.

[57] Balderas, p. 173.

[58] Balderas, p. 35-36.

[59] Balderas, p. 32.

[60] Petitioners' 160.

[61] RCM 1676.

64. Despite GBSM having billed RCM more than $225,000.00 and continuing to perform ongoing work for the RCM 245, on **February 3, 2023**, RCM wanted GBSM to agree that it would take "$150K or less" for the entire job.[62]

65. Mr. Balderas believed Mr. Wilson had him make this offer because, "he was trying to make deals to cut the-cut the cost down, you know, take pennies over the dollar…"[63]

66. Bludworth Marine checked back with RCM on **February 9, 2023,** regarding payment on its second invoice.[64]

67. After having all work approved by the United States Coast Guard, RCM 245 departed Galveston on Thursday, **February 9, 2023**

68. GBSM Invoice 13263 in the amount of $196,212.84 is sent to RCM.[65]

69. When RCM 245 left Galveston, no one at RCM informed Mr. Balderas that GBSM's three ("3") invoices would be denied.[66]

70. RCM sent Mr. Kenneth Pady down to meet with Bludworth on **February 20, 2023,** regarding Bludworth Marine's invoices.[67]

71. On this same date, Mr. Pady stated the following to RCM's Mr. Parker and Mr. Hickey:

"I need to speak with you on the GBSM. After further review of GBSM, that price is within reason for mobile set up to gas free a barge of this size."[68]

---

[62] RCM 1259-1260.

[63] Balderas, p. 174.

[64] Petitioners' 162.

[65] RCM 1710.

[66] Balderas, p. 48.

[67] RCM 1752-1753.

[68] RCM 1756.

72. After RCM 245 left Galveston, an explanation by RCM to its customer, Valero, on **February 21, 2023**, was the following, *inter alia*:

    The RCA creating the ROB was identified by some faulty cargo valves sucking air and preventing proper stripping upon completion of the first cargo discharge. This tied with the leaking ballast header expansion joints that were previously repaired and ultimately replaced, provided an opportunity to investigate and conduct an entire overhaul of each system including upgrades to the IGS…
    This also supplied an opportunity for RCM to pursue cargo valves that were incorrectly reinstalled and not identified prior, and to have these valves replaced properly during this time. The entire cargo system was tested to ensure performance.[69]

73. RCM booked the return of cargo ("jet fuel") pumped off RCM 245 and returned to Valero as "an offset to revenue."[70]

74. Mr. Bludworth wrote to Mr. Wilson on **February 10, 2023**, and stated the following *inter alia*:

    "The two partial invoices for around $300,000 represents less than ½ the the (sic) total to date and we hope we can receive the balance on the 2nd of the two partials paid as soon as today, as we have been asking."[71]

75. Bludworth informed RCM it would have its final invoice to them on Monday, **February 13, 2023.**[72]

76. Bludworth forwarded its final invoice to Mr. Wilson and Mr. Balderas on **February 14, 2023**; yet three ("3") days later indicates he does not have Bludworth Marine's final invoice.[73]

---

[69] RCM 604.

[70] RCM 77.

[71] RCM 1141.

[72] Petitioners 162.

[73] RCM 928 and 1689.

77. On **February 15, 2023**, RCM terminated Mr. Balderas' employment.[74]

78. Mr. Balderas believed he was terminated by RCM as a "cost-cutting decision".[75]

79. Approximately, a week after RCM 245 left Galveston and despite having been on location in Galveston for approximately two ("2") weeks, Mr. Wilson wrote: "Need to understand why they [GBSM] managed this project in such an un-efficient manner.[76]

80. On February 20, 2023, Mr. Wilson represented to Mr. Bludworth that, "we will get organized on a payment".[77] No payment was ever forthcoming.

81. In February and **March 2023**, RCM "was in the process of shoring up its banking".[78]

82. Mr. Wilson, as corporate representative of RCM testified that, "I don't know why I wrote that… and "I didn't really mean anything by it".[79]

83. RCM made a banking change in 2023 or 2024.[80]

84. On M**arch 17, 2023**, Mr. Wilson sent Mr. Parker an email concerning "short term cash needs", but to date, has refused to provide the attachment.[81]

85. In March 2023, Pennantia had denied bills of **$5,852,519.55.** It had bills that needed to be paid of **$8,953,631.23.** Their total debt was at least **$14,806,150.58.** [82]

---

[74] Balderas, p. 94.

[75] Balderas, p. 176.

[76] RCM 1232.

[77] Petitioners' 174.

[78] RCM, p. 62; RCM 489.

[79] RCM, p. 62-63.

[80] RCM, p. 146.

[81] RCM 696.

[82] RCM 405-409.

86. Mr. Balderas approved all three ("3") of GBSM's invoices ("totaling $421,586.03") and testified that GBSM's services rendered were "fair and reasonable".[83]

87. As of **April 19, 2023**, RCM owed Bludworth $585,567.98.[84]

88. Other vendors that provided services to RCM 245 in **January and February 2023** were not paid.[85]

89. Mr. Balderas testified as follows regarding Mr. Bowman and GBSM:

    "He provided, and everybody was aware of what kind of service he was provided (sic) to us. And just moving forward. I mean, he did a great job for us."[86]

90. GBSM and Bludworth Marine had to have RCM 245 with her tug arrested on May 16, 2023.[87]

91. RCM never paid GBSM a dollar ninety ("90") days after it provided its services for the RCM 245 [or to date].[88]

92. RCM has testified under oath that "it was not having money difficulties in February, March, and April 2023.[89]

93. After the RCM 245 was repaired and left Galveston, Mr. Bludworth spoke with Mr. Parker, managing member of RCM on **March 4, 18 and 24, 2023.**[90]

94. Mr. Parker stated that the repairs to RCM 245 "shouldn't have cost that much money" and

---

[83] Balderas, p.59.

[84] Petitioners 20.

[85] Balderas, p. 170.
[86] Balderas, p. 177.

[87] Doc. 6.

[88] RCM, p. 72.

[89] *Id.*

[90] Bludworth, p. 179-180.

"he called us crooks".[91]

95. After RCM 245 was arrested, despite being represented by counsel, Mr. Parker contacted Mr. Bludworth that day. During this call, Mr. Parker stated that GBSM and Bludworth Marine were criminally negligent for environmental crimes and that he [RCM] would fight this forever, and in the end, Bludworth Marine would end up with less money.[92]

**GBSM PROPOSED CONCLUSIONS OF LAW**

1. RCM has acted in bad faith towards GBSM. On **February 28, 2023**, RCM inhouse legal counsel stated the following regarding GBSM's invoices:

   "Candidly, the supplemental invoices following invoice GM13261, which is marked "Final Bill RCM 245 (Vessel Repair), came as a complete shock, as the Owners of the RCM 245 *only ever approved $150,000* for the services and work to be performed by GBSM for Tank Cleaning."[93]

2. On **March 30, 2023**, RCM's bill account indicates GBSM's invoices are "denied bills".[94]

3. On **February 28, 2024**, RCM testified that GBSM's invoices from February 3 through February 14, 2023, were unapproved.[95]

4. This Court has jurisdiction over Complainants' claim pursuant to Tex. R. Civ. P. 185 pursuant to its concurrent or pendant jurisdiction.

5. Complainants are entitled to recover legal fees pursuant to Suit on Account.

6. An award of legal fees pursuant to Suit on Account is not inconsistent with the

---

[91] Bludworth, p. 30.

[92] Bludworth, p. 190-192.
[93] Petitioners 376.

[94] RCM 405-406

[95] RCM, p. 149-150.

    Maritime Lien Act which is silent regarding recovery of legal fees.

7. State law may 'supplement' federal maritime law but may not directly contradict it.[96]

8. The Unites States Supreme Court has opined that punitive damages are "available in maritime cases for tortious acts of a particularly egregious nature."[97]

9. A "district court has wide discretion in deciding motions for attorney's fees in admiralty cases."[98]

10. Alternatively, attorney's fees are awarded under admiralty law standalone under an exception to the American Rule. Attorneys' fees are allowed when there has been a showing that the losing party has conducted an action in bad faith, vexatiously, want only, or for oppressive reasons.[99]

11. 28 U.S.C.S. § 1920 authorizes Complainant to recover fees of the clerk and marshal, and the court is to include in its final judgment all reasonable expenses paid by the prevailing party incidental to, or arising from the arrest or attachment of any vessel.

---

[96] Gilmore & Black, The Law of Admiralty § 1-17, at 49-50 (2d ed. 1975).

[97] *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 129 S.Ct. 2561, 174 L. Ed. 2d 382 (2009).

[98] *Fernandez v. Haynie*, 31 Fed. Appx. 816, 2002 U.S. App. LEXIS 4827, citing to *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line*, 160 F.3d 170, 1998 U.S. App. LEXIS 28247, 1999 AMC 380.

[99] *Summit Valley Indus. v. United Bhd. of Carpenters & Joiners*, 456 U.S. 717, 721, 102 S. Ct. 2112, 2114, 72 L. Ed. 2d 511, 515 (1982).